**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ. #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Email: brad@schleierlaw.com

*Attorneys for Plaintiff Gary Pearlmutter*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Pearlmutter, a married man, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Arthur Babbott, a married man, | **Jury Trial Demanded** |
| Defendant. | |

Plaintiff Gary Pearlmutter, for his Complaint makes the following allegations against Defendant Arthur Babbott as follows:

**JURISDICTION AND VENUE**

1. This is an action against Defendant Arthur Babbott to remedy the deprivation of Plaintiff Gary Pearlmutter's federally protected rights relating to the termination of his employment.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 as this matter involves a federal question under the Civil Rights Act of 1871, 42 U.S.C. §1983.

3. As the unlawful practices complained of herein occurred within Coconino County, venue is proper in this Court.

## PARTIES

4. Plaintiff Gary Pearlmutter is a married man and currently resides in Coconino County, Arizona.

5. Coconino County (hereinafter "County") is a governmental entity.

6. Coconino County was Plaintiff's employer from September 1993 until January 4, 2019.

7. Defendant Arthur Babbott ("Defendant Babbott") at all times relevant herein was/is a member of Coconino County's Board of Supervisors and held the position of Chair of said Board. Defendant Babbott is a married man who resides in Coconino County, Arizona. All acts of Defendant Babbott were done on his own personal behalf/capacity and/or on behalf of his marital community under the color of state law.

## FACTUAL ALLEGATIONS

8. Plaintiff was hired by Coconino County in September 1993 as Deputy Public Defender.

9. In 1999, Plaintiff was selected as one of the first deputies when the Legal Defender's Office was created.

10. In 2005, Plaintiff was appointed Director of Legal Defender's Office. He remained in this position until December 21, 2018. As Director of Legal Defender's Office, Plaintiff was the administrator for indigent legal services, including providing representation for persons who face civil commitment proceedings for mental disabilities.

11. Prior to his termination, Plaintiff was never disciplined and had always received positive feedback regarding the fulfilment of his role as the Director of Legal Defender's Office.

12. On December 4, 2018, citizen Rachael Simukonda, and her adult daughter, Domonique Durbin, parked their vehicle in a spot designated as "Employee Parking Only"

and "Reserved for Coconino County Legal Defender's Office" at or around 1:00 p.m. at what was known as the "Ice House Building."

13. Plaintiff and his staff typically parked their vehicles in that reserved location spot. Plaintiff observed the vehicle owned by Ms. Simukonda was still parked in that reserved parking space and hour later and parked his sedan vehicle approximately five feet behind Ms. Simukonda's vehicle. Due to limited reserved parking spaces, this was a practice of many others who utilized the Ice House Building.

14. Ms. Simukonda and her daughter returned to their vehicle just before 3:00 pm and they began to try to maneuver their vehicle out of the reserved parking spot.

15. Plaintiff observed Mr. Simukonda's attempts to maneuver her vehicle from his office window. He became concerned about Ms. Simukonda's vehicle colliding with his vehicle as she attempted to move out of the reserved parking location and made contact with Ms. Simukonda from the second-floor veranda. The contact was made from 10-12 feet away from Ms. Simukonda and was witnessed by her daughter who was outside the vehicle directing her mother.

16. Ms. Simukonda stated she was handicapped and could park wherever she wanted and rolled up her window.

17. Plaintiff got into his vehicle to move it, however, Ms. Simukonda continued to try to maneuver her vehicle out of the reserved parking spot. Plaintiff became concerned about this latest maneuver. Plaintiff backed his vehicle approximately nine to twelve inches and exited it to retrieve his cell phone from inside his office, so he could take photos to document the illegal parking and any possible damaged to his vehicle.

18. Upon Plaintiff stepping out of his vehicle, Ms. Simukonda's daughter stated the right rear side of his car touched her, although she had been off to the side of his vehicle in order to assist her mother with the moving of Ms. Simukonda's vehicle.

19. Plaintiff's vehicle has a rear-view camera, which did not show Ms. Domonique Durbin behind his vehicle. In addition, the proximity alarm for people or objects was never

activated during Plaintiff's back-up. Plaintiff also observed that she had no dirt on her pants from the dirt on Plaintiff's vehicle.

20. Plaintiff then entered the Ice House Building to retrieve his cell phone. Shortly after, Ms. Damonique Durbin also climbed the set of stairs and went into the same building.

21. Plaintiff returned a few minutes later and took photos with his cell phone. He then moved his vehicle and Ms. Simukonda moved her vehicle across the street, and Ms. Damonique Durbin joined her mother shortly after.

22. Ms. Simukonda filed a police report with Flagstaff Police Department on December 5, 2018. Ms. Simukonda reported that Plaintiff was yelling and screaming at her vehicle's window, and that Plaintiff followed Ms. Damonique Durbin into the Ice House Building. The statements made to Flagstaff Police Department by Ms. Simukonda and her daughter were not supported by the video obtained by Flagstaff Police Department.

23. Plaintiff was placed on administrative leave on December 7, 2018 pending an investigation concerning allegations of misconduct by the County Manager, James Jayne relating to the December 3, 2018 situation.

24. On December 7, 2018, Plaintiff met with Dr. Marie Peoples, Deputy County Manager, and Ms. Erika Philpot, Director of Human Resources. Plaintiff was informed the County was in receipt of the police report by Ms. Simukonda and placed him on paid administrative leave pending an investigation.

25. On December 19, 2018, Plaintiff sent an email to Dr. Peoples and Ms. Philpot and offered them a copy of his statement to Flagstaff Police Department and the video of the incident.

26. Dr. Peoples responded to the email on December 20, 2018 instructing Plaintiff to meet with her the next day at the County Manager's Office.

27. On December 21, 2018, Plaintiff went to the County Manager's Office as requested. Dr. Peoples was present for the meeting, along with Mr. Jayne and Ms. Philpot. Plaintiff offered the Flagstaff police report and the video, but they informed him that they had

no interest in seeing those items. They presented the Plaintiff with a Notice of Termination of Employment and informed him that he would be terminated if he did not resign or retire.

28. The Notice of Termination of Employment was allegedly authored by Defendant Babbott, as the Chair of Coconino County Board of Supervisors. At the time of his review, Plaintiff believed he had been provided a document signed by Defendant Jayne.

29. Moreover, Defendant Babbott provided Mr. Jayne the authority to terminate Plaintiff, even though Defendant Babbott had no authority to terminate Plaintiff's employment pursuant to A.R.S. §11-821.

30. The Notice of Termination noted that Plaintiff was terminated effective that day and that said termination would be approved by the Board of Supervisors at a later date even though the entire Board of Supervisors was the only entity vested with the right to terminate pursuant to A.R.S. §11-581.

31. Plaintiff was not permitted to keep a copy of the Notice of Termination.

32. The termination of Plaintiff was beyond the "legal" powers of Defendant Babbott to act on behalf of the Coconino County Board of Supervisors in violation of A.R.S. §38-431 *et seq.* He acted in his individual capacity, on behalf of his marital community and under the color of state law to remove Plaintiff from his position.

33. During the meeting on December 21, 2018, Plaintiff requested additional time to consider his option of resignation or retirement, and was initially told "no."

34. Left with no choice as he was told he was terminated from his position, Plaintiff decided he would maybe just resign and was asked to draft a letter of resignation. Ms. Philpot suggested a resignation date of January 4, 2019, so Plaintiff could have time to determine his retirement benefits, in light of the holidays and provide a letter of resignation. Plaintiff provided a handwritten note delineating he intended to resign by January 4, 2019 and that he would provide a formal notice of resignation.

35. At the time of the December 21, 2018 termination meeting, neither Jayne, Peoples, or Defendant Babbott had the authority to terminate Plaintiff's employment.

36. On December 21, 2018, the Flagstaff Police Department forwarded the police report regarding the parking lot incident to the Mohave County Attorney's Office for review. It referred the matter to its Chief Deputy County Attorney.

37. On December 31, 2018, Plaintiff learned that the Chief Deputy County Attorney determined there was no basis for any charges to be made against him with regard to incident with Ms. Simukonda and her daughter.

38. Prior to and on January 4, 2019, Plaintiff never provided a letter of resignation.

39. Even though Plaintiff never submitted a letter of resignation nor spoke to anyone at Coconino County confirming his resignation, Coconino County, through the County Manager, placed on the consent agenda a request that the Board accept Plaintiff's resignation. The Board of Supervisors accepted Plaintiff's non-existent "resignation" as part of the consent agenda on January 8, 2019.

40. Plaintiff was not provided any notice that his termination was placed on the Board of Supervisor's agenda.

## COUNT ONE

## VIOLATION OF 42 U.S.C. §1983 – DUE PROCESS

41. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

42. Plaintiff was a public employee employed by Coconino County.

43. The County is a public entity.

44. Defendant Babbott is a public employee acting in his individual capacity under the color of state authority.

45. Plaintiff had a property interest in his position to only be terminated by the Coconino County Board of Supervisors.

46. Defendant Babbott worked, individually and/or, upon information and belief in concert to deprive Plaintiff of the right to Due Process guaranteed by the United States

Constitution when Plaintiff's employment was terminated by Jayne and Peoples along with Defendant Babbott and not by the County Board of Supervisors as provided by A.R.S. §11-581.

47. Moreover, Defendant Babbott's "legal" actions were taken in violation of A.R.S. §38-431 *et seq.*

48. Defendant's actions were under the color of state law.

49. Plaintiff was terminated from his employment as he had not provided a written retirement or resignation to the County by January 4, 2019.

50. Notwithstanding that information, Plaintiff was not permitted any Due Process rights to have his employment status considered and determined by the Coconino County Board of Supervisors before his position was terminated on December 21, 2018.

51. Moreover, the action of accepting the non-existent "resignation" of Plaintiff by the Board of Supervisors was done with no notice to Plaintiff that his employment status was to be discussed/decided on January 8, 2019.

52. Said conduct violates the Civil Rights Act of 1871, 42 U.S.C. §1983.

53. As a direct and proximate result of Defendant's actions, Plaintiff Pearlmutter has suffered loss of income and the value of benefits.

54. Plaintiff has also suffered emotional distress, anxiety, embarrassment, humiliation, denial of processional standing and reputation, deprivation of the right to due process, and the loss of ordinary pleasures of life as a result of Defendant's conduct.

55. Defendant Babbott's actions were willful and wanton and conducted with an evil mind designed to deprive Plaintiff of his protected constitutional rights as to entitle Plaintiff Pearlmutter to recover punitive and exemplary damages.

56. Plaintiff Pearlmutter is entitled to an award of attorneys' fees pursuant to 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. General and Special damages to be proven at trial;

b. Compensatory damages to be proven at trial;

    c.      Punitive or Exemplary damages;

    d.      Attorneys' fees;

    e.      Costs of suit; and

    f.      Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all claims and issues so triable.

DATED this 21st day of December 2020.

                SCHLEIER LAW OFFICES, P.C.

                /s/ Bradley H. Schleier
                Bradley H. Schleier, Esq.
                *Attorneys for Plaintiff Gary Pearlmutter*